IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TAWNA ANDREWS, INDIVIDUALLY, | § | |
| AND AS PERSONAL REPRESENTATIVE | § | |
| OF THE ESTATES OF LONNIE ANDREWS | § | |
| AND JOSHUA ANDREWS; BONNIE | § | |
| ANDREWS, INDIVIDUALLY, AS | § | |
| PERSONAL REPRESENTATIVE OF THE | § | |
| ESTATE OF LONNIE ANDREWS; AND | § | |
| TARA ANDREWS AND JUSTIN ANDREWS | § | |
| | § | |
| Plaintiffs, | § | Case No. 4:05-CV-419 |
| | § | |
| PEGGY MACOMBER AND | § | |
| HENRY MACOMBER, INDIVIDUALLY | § | |
| AND AS REPRESENTATIVES OF THE | § | |
| ESTATE OF DAVID MACOMBER | § | |
| | § | |
| Intervenor-Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION & ORDER GRANTING DEFENDANT
UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

Before the court are "Defendant United States' Motion for Summary Judgment" (docket entry #95), "Plaintiffs and Intervenors' Joint Response to Defendant United States' Motion for Summary Judgment" (docket entry #104), and "Defendant United States' Reply to Plaintiffs and Intervenors' Joint Response to Defendant United States' Motion for Summary Judgment" (docket entry #115). Having considered the motion, the response, the reply, and the applicable law, the court is of the

opinion that the motion should be granted.[1]

**BACKGROUND**

This case arises from an automobile accident in which three people were killed.  David Macomber ("Macomber") fell asleep while driving his car, veered into on-coming traffic, and collided with another vehicle.  Father and son Lonnie and Joshua Andrews were driving the other vehicle, and both were killed in the accident.  Macomber suffered grave injuries.  Tawna Andrews, Individually and as Personal Representative of the Estates of Lonnie Andrews and Joshua Andrews, Bonnie Andrews, Individually, as Personal Representative of the Estate of Lonnie Andrews, and Tara Andrews and Justin Andrews (collectively, "Plaintiffs") brought suit against the United States for negligence.   Approximately one year after the accident, Macomber died from the injuries he sustained in the car accident and Peggy Macomber and Henry Macomber, Individually and as Representatives of the Estate of David Macomber (collectively, "Intervenors") intervened and joined in Plaintiffs' claim against the United States.

Macomber was a member of C Company, 1-112th AR ("C Company") of the Texas Army National Guard ("TARNG") in Denison, Texas.  On March 12, 2004, Macomber assembled with C Company for his first weekend of training at the Denison Armory.  Upon arriving at the Denison Armory, C Company traveled to Fort Hood for training exercises where Macomber worked in tank maintenance with Specialist Kevin Lindenzweig ("Lindenzweig") as his immediate supervisor. Response, p. 4.  At Fort Hood, Macomber cleaned and maintained the vehicles during the day on Saturday and then went on an all-night recovery mission on Saturday night.  Response, p. 4.

---

[1]  The United States also has two motions to dismiss pending.  As the court is granting the motion for summary judgment, it will not reach the motions to dismiss.

Macomber may have had only twenty minutes of sleep on his all-night mission and then "hit the barracks at 5:15 a.m." Response, Ex. 4. Macomber was up for morning call at 6:45 a.m. on Sunday morning and worked all day on Sunday until he returned to the Denison Armory for dismissal. Response, p. 4.

The entire C Company returned to the Denison Armory, and First Sergeant Timothy Hartelben ("Hartelben") convened C Company for its final formation. Response, p. 6. Hartelben addressed several topics, speaking to C Company for approximately ten minutes, and then dismissed the men. Response, p. 6. Macomber stopped by the office of one of his supervisors, David Willis ("Willis"), to get a personal form and to see if Willis needed Macomber to stay for any reason, but was told he could leave. Response, p. 6. Macomber then returned to his privately-owned vehicle and began his drive home. Response, p. 6. After driving eighteen miles, Macomber fell asleep at he wheel, crossed into on-coming traffic and collided with the car of father and son Lonnie and Joshua Andrews. Response, p. 6.

TARNG has regulations and policies in place with regard to sleep and the amount of sleep service members are required to get while on duty. For example, there was a "Safety Standdown" which described that a sleep management plan allowing for a period of eight hours of continuous sleep should be in place. Response, Ex. 13. Also, the Field Manual states that "[s]ervice members need 4 to 5 hours per 24-hour period" and that if they do not receive that amount of sleep, "the first chance for a long rest period must be used for sleep." Response, Ex. 18. It was up to the superior officers to not only pay attention to the amount of sleep the service members received but also to ask "the obvious question: 'When did you sleep last and how long did you sleep?'" *Id.* According to the Plaintiffs and Intervenors, these regulations and protocols were intended to prevent accidents and

the endangerment of service members and the public.  Response, Ex. 30.  Plaintiffs and Intervenors' Response and the attached exhibits demonstrate an overall emphasis on service members getting a sufficient amount of sleep and on TARNG superior officers ensuring that lower officers received the requisite amount of sleep.

During the weekend of the accident, there was an unwritten but recognized sleep plan mandating that every service member get no less than four hours of sleep each night.  David Madden U.S. Army Accident Report, Response, Ex. 7.  Despite that, Battalion Commander David Madden ("Madden") estimated that the crew had been on duty close to 24 hours prior to getting just two hours of rest.  *Id.*  Therefore, he ensured that billets[2] were available to those who felt they needed rest before traveling home on Sunday.  *Id.*  Lindenzweig knew of Macomber's lack of sleep but failed to report it to his supervisors, and, when he left C Company, he told Macomber only that he would see him later.  Lindenzweig Statement, Response, Ex. 4.  No one made Macomber stay in the barracks and sleep his allotted time on Sunday morning, and no one informed Major Raymond Naraine ("Naraine") of Macomber's lack of sleep once C Company returned to the Denison Armory.  Naraine Dep. 137:16-138:13.  Naraine stated that if he had known that Macomber had not received at least four hours of sleep he would have ordered him to stay and sleep.  *Id.* at 139:23-140:8.  However, because Naraine was not aware of Macomber's alleged exhausted state, he did not require him to stay and sleep.  Willis stated that Macomber appeared to be reasonably alert when he stopped by Willis's office to get a copy of a form for his personal records and to see if there was anything that he could do before he left.  Response, Ex. 14.  Willis did not tell Macomber to go home because Macomber was fatigued and did not ask Macomber whether he was fatigued.  Rather, Macomber left

---

[2] A billet is a civilian house where soldiers are temporarily lodged.

because he had been released, as had all service members of C Company.  Plaintiffs and Intervenors point out that the unwritten policy is for a superior officer to ensure that a service member who the officer knew did not get sufficient sleep was okay to drive home.  Willis Dep. 130:7-21.  There is no indication that anyone asked Macomber whether he was fatigued, nor is there any indication that he brought his fatigued condition to anyone's attention before he left the Denison Armory.  *Id.* 131:4-15.

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually insufficient claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material.  *See id.*  The party moving for summary judgment has the burden to show that there is no genuine issue of fact and that it is entitled to judgment as a matter of law.  *See id.* at 256.  If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  The nonmovant must adduce affirmative evidence.  *See Anderson*, 477 U.S. at 257.

In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the movant.  *See Anderson*, 477 U.S. at 255. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor.  *See id.*

## DISCUSSION & ANALYSIS

Liability under the Federal Tort Claims Act is governed by state law.  Therefore, because Texas is the state in which the alleged negligent acts took place, the substantive law of Texas controls any allegation of negligence.  28 U.S.C. § 1346(b)(1).  A common law claim of negligence in Texas consists of three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages that are a proximate result of that breach.  *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998). Thus, the threshold inquiry in a negligence claim is whether a duty is owed to the plaintiff by the defendant.  *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). Duty is a question of law for the court to decide from the particular facts surrounding the occurrence in question.  *Van Horn*, 970 S.W.2d at 544.  If no duty exists, then there can be no negligence claim. *Id*.  In determining whether a duty exists, the court should consider "the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden on the employer." *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983).  As a general rule, a person is under no duty to control the conduct of another.  *Id.*  A few limited exceptions to this rule have been carved out by the Texas Supreme Court, and the Plaintiffs and Intervenors urge that one such exception applies in the instant case.

Taking into account the general law with regard to duty, in *Otis Engineering* the Texas

Supreme Court imposed the following duty on employers:

> when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others.

*Otis Eng'g Corp.*, 668 S.W.2d at 311.  It is this exception that the Plaintiffs and Intervenors argue exists in the instant case.  To determine whether this duty exists in a case, the inquiry is twofold. First, *Otis* requires that an employer had knowledge of the employee's incapacity and then second, that the employer exercised control over the incapacitated employee because of the incapacity. *Id.* at 309 ("If a duty is to be imposed on Otis it would not be based on the *mere knowledge* of [the employee's incapacity], but would be based on additional factors."); *Duge v. Union Pacific R.R. Co.*, 71 S.W.3d 358, 362 (Tex. App.–Corpus Christi 2001, pet. denied).  The type of "control" over the incapacitated employee that is contemplated by *Otis* involves "an individual acting affirmatively in response to another's incapacity."  *Edwards v. Silva*, 32 S.W.3d 713, 717 (Tex. App.–San Antonio 2000, pet. denied).

Courts stress that for a duty to exist under the narrow *Otis* exception, the employer must undertake an affirmative action *because of* the employee's incapacity.  *See Loram Maintenance of Way, Inc. v. Ianni*, 210 S.W.3d 593, 597 (Tex. 2006).  For example, the employee in *Otis* was intoxicated and the employer chose to send him home *because* he was intoxicated.  *See Otis*, 668 S.W.2d at 308.  Also, in a West Virginia case relied upon by the Texas Supreme Court, an employer sent an employee home because he complained of being fatigued after working 27 hours and said that he could no longer work.  *Robertson v. LeMaster*, 301 S.E.2d 563 (W. Va. 1983).  In that case, the employee wanted to go home, told the employer of his fatigue and because of this fatigue, he was

sent home.  *See id.* at 565, 568-69.  Thus, in order for an employer to be held liable under the *Otis* exception, the employer must perform an affirmative act of control over the incapacitated employee. Finally, the *Otis* exception is narrow, and many courts have refused to extend *Otis* beyond its holding.  *See, e.g., McNeil v. Nabors Drilling USA, Inc.*, 36 S.W.3d 248, 250-51 (Tex. App.–Houston [1st Dist] 2001, no pet.).  In *Estate of Catlin v. General Motors Corporation*, the court refused to extend *Otis* and find that the creation of an internal policy dealing with alcohol constituted an affirmative act which created a duty.  *Estate of Catlin v. General Motors Corp.*, 936 S.W.2d 447, 451 (Tex. App.–Houston [14th Dist.] 1996, no pet.).

Several courts have looked to whether a duty exists in circumstances similar to those in the instant case, but very few have found a duty existed.  The Fifth Circuit examined a factually-similar case and concluded that a duty did not exist.  *See  Pilgram v. Fortune Drilling Co.*, 653 F.2d 982 (5th Cir. 1981).  In *Pilgram*, the employees worked long shifts and, while the employer did pay a travel allowance to *one* member of each of its crews, it did not provide any kind of living quarters where employees could rest after a tiring day's work before driving a long distance home.  *Id.* at 983. An employee finished working a twelve-hour shift and began his 117.5-mile drive home when he was in an automobile accident that left him a paraplegic and confined to a wheelchair.  *Id.*  The court found that no Texas court had recognized a duty on the part of an employer to prevent his employees from driving when the employer knows, or should know, that his employers are so fatigued due to work that they cannot be safe, alert and competent drivers.  *Id.* at 984.  A later Texas appellate court case again recognized that no Texas court imposed liability on an employer for damages caused by a fatigued employee driving home after work.  *Duge*, 71 S.W.3d at 363.  The court in *Duge* also cites to several Texas appellate court cases that did *decline* to impose liability under such circumstances.

-8-

*Id.  See, e.g., Moore v. Times Herald Printing Co.*, 762 S.W.2d 933, 934-35 (Tex. App.–Dallas 1988, no writ).

The Plaintiffs and Intervenors point the court toward *Escoto v. Estate of Ambriz*, 200 S.W.3d 716 (Tex. App.–Corpus Christi 2006, pet. filed), to support their argument that a duty exists in the instant case.  In *Escoto*, the employee worked a 12-hour graveyard shift and was fatigued.  *Id.* at 721. As he drove home, his vehicle crossed the highway median, colliding head-on with another vehicle which resulted in the deaths of all motorists.  *Id.*  A lawsuit was filed against the employer alleging several negligence claims.  *Id.*  The court found that the employer had a duty under the circumstances because "it was aware of the dangers of fatigue, knew of [the employee's] fatigue prior to the accident in question, but nonetheless permitted him to drive home to the foreseeable peril of himself and others."  *Id.* at 726.  The court mentioned that there was a policy in place to keep employees from getting to fatigued; however, it was not implemented and the employee in question was never trained on fatigue.  *Id.* at 725-26.  The court found that the employer exercised control over the employee by requiring its employees to work 12-hour graveyard shifts for one week straight, followed by a week of 12-hour day shifts, taking a week off in between when other similar employers utilized eight-hour shifts.  It appears, however, that the court was actually tracking the "factors" to determine the existence of a duty found in *Otis* rather than applying the rule laid out by *Otis* and its progeny.  *See id.* at 725-26.

The decision in *Escoto* puts this court in a difficult position, especially given the fact that the court's ruling in *Escoto* has been appealed to the Texas Supreme Court, but no ruling on the petition for review has been made.  Virtually all other cases involving the *Otis* exception have required an affirmative act on the part of the employer *because of* the incapacity, such as telling the employee

to go home because he was intoxicated or fatigued.  In *Escoto*, the court finds the affirmative act to be the employer's decision to work the employee in longer shifts than was the industry custom, to fail to implement its policy on fatigue, and to fail to train its employees on fatigue, which are all acts that came before the employee's incapacity.  If the court follows the logic in the *Otis* line of cases, no duty exists in the instant case because the TARNG took no affirmative act, even if it did have knowledge of Macomber's fatigue.  If the court follows the logic in *Escoto*, a duty does exist because there was at least some knowledge of Macomber's lack of sleep, there was a policy on sleep that was not enforced, and Macomber was not properly trained on fatigue.  Because the weight of authority establishes that no duty exists in circumstances similar to the facts herein and given the fact that *Otis* and its progeny seem to stress that the employer must have taken affirmative action *because of* the incapacity, the court finds that no duty exists in the instant case.  In other words, the court chooses to follow the rule as it was set forth and applied in *Otis* and its progeny.

As such, to meet their burden the Plaintiffs and Intervenors would have to present evidence that there was a genuine issue of material fact as to whether (1) Macomber's supervising officers had knowledge of his incapacity, and (2) Macomber's supervising officers exercised control over him because of that incapacity.  While there is conflicting evidence as to who had knowledge of Macomber's fatigue, there is no evidence that anyone at the Denison Armory or in the TARNG exercised control over Macomber because of his fatigue.  Macomber was released by his superior officers at the same final dismissal as the other C Company service members.  He then stopped by Willis's office in order to pick up a form and ensure he was no longer needed.  He did not mention being fatigued and did not exhibit signs of fatigue.  The record reflects that Willis had no knowledge at this point of Macomber's lack of sleep and while it might have been prudent to ask if Macomber

was fatigued, merely having a policy in place to do so will not create a duty.  *See Estate of Catlin*, 936 S.W.2d at 451. Willis told Macomber that he was free to go, which was not similar to the acts in *Otis* or *Robinson* wherein the supervisors made the employees leave due to their incapacity. Plaintiffs have presented no evidence which creates a genuine issue of material fact as to whether Defendant exercised control over Macomber.  Therefore, the court finds that no duty existed and as such no claim for negligence lies.  *See Van Horn*, 970 S.W.2d at 544.

C<small>ONCLUSION</small>

For the reasons stated,  the court concludes that the Defendant owed no duty to the Plaintiffs and Intervenors in the instant case and therefore, the Defendant is entitled to judgment as a matter of law in the instant case.  Therefore, the court hereby **GRANTS** the "Defendant United States' Motion for Summary Judgment" (docket entry #95).  All motions that remain pending are denied as moot.

**SIGNED this the 4th day of May, 2007.**

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE